## United States Bankruptcy Court, Northern District of Illinois

| Name of Assigned Judge | A. Benjamin Goldgar | CASE NO. | 19 B 36659 |
|---|---|---|---|
| **DATE** | May 30, 2023 | **ADVERSARY NO.** | 21 A 215 |
| **CASE TITLE** | BCL Home Rehab LLC v. Fixler | | |
| **TITLE OF ORDER** | Order granting motion to dismiss amended complaint | | |

**DOCKET ENTRY TEXT**

The motion of defendant Kenneth Fixler to dismiss the amended adversary complaint of plaintiff BCL-Home Rehab LLC for failure to state a claim is granted. The amended complaint is dismissed with prejudice. A separate Rule 7058 judgment will be entered.

[For further details see text below.]

### STATEMENT

Before the court for ruling is the motion of defendant Kenneth Fixler under Rule 12(b)(6), Fed. R. Civ. P. 12(b)(6) (made applicable by Fed. R. Bankr. P. 7012(b)), to dismiss the amended adversary complaint of plaintiff BCL-Home Rehab LLC for failure to state a claim. Like its predecessor, the amended complaint alleges two nondischargeability claims against Fixler. The amended complaint also largely alleges the same facts as its predecessor, with only a few minor changes. Because those changes fail to fix the defects in the original complaint, Fixler's motion will be granted and the amended complaint dismissed. This time, the dismissal will be with prejudice.

#### 1. Facts

The facts appear in the decision dismissing Home Rehab's original complaint. *See BCL-Home Rehab LLC v. Fixler (In re Fixler)*, Nos. 19 B 36659, 21 A 215, 2022 WL 2903356 (Bankr. N.D. Ill. July 22, 2022). Familiarity with the facts is assumed.

#### a. Background

Briefly, Home Rehab was a limited liability company that bought, rehabilitated, and resold foreclosed single-family homes in the Chicago area. Fixler began working for Home Rehab in 2009 and became its president and one of its members a year later. The other Home

**STATEMENT**

Rehab members allowed him to control the company's operations.

At first, Fixler's guidance was successful. From 2009 through 2013, Home Rehab made a profit. Buoyed with his success, Fixler had a "strategic discussion" with the other members in early 2014 in which he proposed to expand the business into the luxury home market. The other members agreed to his proposals. As Fixler pursued the business's expansion, the members continued to allow Fixler to control Home Rehab's daily operations. Fixler found the properties, staffed the company, oversaw construction, and arranged and oversaw property sales.

In 2014 and early 2015 alone, Home Rehab spent more than $40 million to acquire new properties. Fixler planned to sell fifteen of the properties for $2 million apiece. At some point, the other Home Rehab members became concerned about the pace of acquisitions, and in 2015 they met with Fixler to discuss their concerns and check on his business plan. Fixler reassured them that his plan was sound and the pace of acquisitions reasonable.

He was mistaken. Throughout 2015 and into 2016, Fixler missed deadlines, failed to meet projections, made poor hiring decisions, caused the company to incur inflated carrying costs, and allowed subpar construction that exposed the company to homeowner warranty claims and lawsuits. Still, he insisted that Home Rehab would turn a profit.

In September 2016, though, Fixler changed his tune, admitting to the other members not only that the company would not meet expected profits but also that expected losses would come to $4 million. He assured them that he could nevertheless arrange a "soft landing" for Home Rehab.

With projected losses on the horizon, Home Rehab's other members decided they had to pay in capital to cover the company's losses for 2015 and the first half of 2016. Fixler paid his $727,435 share. But there was no "soft landing." The company continued to suffer losses over the next two years, and the members continued to contribute capital to cover them. Fixler paid another $800,000 as his share of the 2017 losses.

When it came to the 2018 losses, though, Fixler paid only $300,000 of his $1.7 million share. To come up with the rest, he asked for "short term help" until he could get money from his wealthy father. He took out a mortgage on his home to pay another $440,000 of his capital contribution. Fixler also asked and was allowed to draw $195,000 ($15,000 per month) from Home Rehab to meet his living expenses.

Fixler never paid his full share of the business losses, nor did he repay any of the living expense draws. He left Home Rehab in May 2019. Some months later, he sought protection under chapter 7 of the Bankruptcy Code.

# STATEMENT

Home Rehab then filed an adversary complaint against Fixler alleging that his unpaid share of the business losses and the unreimbursed living expenses were nondischargeable. The complaint had two counts. Count I alleged that Fixler's debts were for money "obtained by false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A). Count II alleged that the debts resulted from "defalcation by a fiduciary." 11 U.S.C. § 523(a)(4).

### b. Dismissal of the Original Complaint

Fixler moved to dismiss the complaint for failure to state a claim, and the motion was granted. Neither count stated a claim.

Count I failed to state a claim about the business debt as a matter of law. Section 523(a)(2)(A) concerns debts for money, property, services, or credit "to the extent obtained by" fraud. 11 U.S.C. § 523(a)(2)(A). But the business loss debt Home Rehab alleged was "for operational losses the company suffered, not for money that Fixler 'obtained.'" *Fixler*, 2022 WL 2903356, at *5. Nowhere had Home Rehab alleged that "the business losses somehow ended up in his pocket." *Id.*

Count I also failed to state a claim about the unpaid living expense draws because Fixler's assurances he would repay them with his father's help were promises, and a promise generally will not support a section 523(a)(2) claim. *Id.* at *6. Although a false promise can support a claim if the debtor made the promise never intending to keep it, Home Rehab alleged only the conclusion that Fixler never intended to repay the draws and alleged that conclusion on "information and belief." *Id.* Rule 9(b) allows intent to be "be alleged generally," Fed. R. Civ. P. 9(b), but intent cannot be pled as a mere conclusion, *Ashcroft v. Iqbal*, 556 U.S. 662, 686-87 (2009). And pleading fraud on information and belief posed another problem. To plead fraud that way, the facts supporting the claim must be unavailable, and the plaintiff must provide grounds for his suspicions. Home Rehab did not say the facts showing Fixler's intent were unavailable and offered no grounds for its suspicions. *Fixler*, 2022 WL 2903356, at *6.

Count II, finally, failed to state a claim under section 523(a)(4) for defalcation by a fiduciary because Home Rehab alleged no facts from which it could be inferred that Fixler was its fiduciary. Home Rehab did not try to allege an express fiduciary relationship. And Home Rehab alleged no implied fiduciary relationship because nothing in the complaint suggested there was "a difference in knowledge or power between fiduciary and principal" that gave "the former a position of ascendancy over the latter." *Id.* at *7 (internal quotation omitted). The 2017 operating agreement Home Rehab attached gave management and control of the company to the members generally, not just to Fixler. Fixler exercised sole control, true, but he had that control only because the other members allowed him to have it. His "position of ascendancy" resulted from "their *laissez-faire* attitude" rather than Home Rehab's corporate structure. *Id.*

Because Home Rehab could never shoehorn the business loss debt into section 523(a)(2)(A), the business loss claim in Count I was dismissed with prejudice. Home Rehab was

STATEMENT

invited to amend the other Count I claim as well as the claim in Count II. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chi.*, 786 F.3d 510, 519 (7th Cir. 2015) (stating that a plaintiff whose complaint has been dismissed should usually receive "at least one opportunity to try to amend").

### c. The Amended Complaint

Home Rehab accepted the invitation and filed an amended complaint. The amended complaint drops the business loss claim in Count I and tries to bolster the facts supporting the remaining claims. The facts alleged, though, are largely the same. The amended complaint makes two changes. It attaches (*see* Am. Comp. Ex. A to Ex. 1) and describes (*see id.* ¶¶ 20-21, 35) an earlier 2012 Home Rehab operating agreement, and it also attaches (*see id.* Ex. 1) an affidavit from Elan Peretz, managing director and general counsel of Barnett Capital, Home Rehab's parent.[1]

Fixler has moved to dismiss the amended complaint, arguing that none of the limited changes causes it to state a claim.

### 2. Discussion

Fixler's motion is well taken. The Peretz affidavit and earlier operating agreement, along with a smattering of new allegations based on these exhibits (*see id.* ¶¶ 20-21, 23, 26, 29, 32, 35-36, 48, 60, 72-74, 80, 83, 103), merely underscore the original complaint's allegations. They raise the volume level, in other words, but they do not change the tune, and so they fail to make the claims any more plausible than they were.[2]

---

[1] Although attaching an affidavit to a complaint is unusual, an affidavit qualifies as a "written instrument" under Rule 10(c), Fed. R. Civ. P. (made applicable by Fed. R. Bankr. P. 7010), and can be considered on a motion to dismiss, *Northern Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452-53 (7th Cir. 1998). Fixler objects to the Peretz affidavit because, he says, it contains hearsay and is not properly verified under 28 U.S.C. § 1746. These might be valid objections if the affidavit were offered as evidence. But at this stage, Home Rehab has offered the affidavit only as an exhibit to its amended complaint, not as evidence. Attaching the affidavit does not lend it any evidentiary status. *See Ingenhutt v. State Farm Inv. Mgmt. Corp.*, No. 1:15-cv-1303-JES-JEH, 2017 WL 1398646, at *4-5 (C.D. Ill. Apr. 18, 2017) (noting that although an affidavit attached to a complaint qualifies as a "written instrument" under Rule 10(c), attaching it does not make it "automatically admissible [at] trial").

[2] Fixler submits with his motion a helpful redlined version of the amended complaint identifying the differences.

**STATEMENT**

### a. Count I

Count I still fails to state a claim under section 523(a)(2)(A) that Fixler's debt for the living expense draws is nondischargeable. That is so because Count I remains devoid of facts permitting an inference that Fixler had the requisite fraudulent intent.

As the dismissal decision explained, *see Fixler*, 2022 WL 2903356, at *6, a false promise to pay is not a statement of "present or past fact" and so is actionable only if the debtor had no intention of fulfilling the promise when he made it. *Handler v. Moore (In re Moore)*, 620 B.R. 617, 629 (Bankr. N.D. Ill. 2020). The focus, then, is not on the debtor's ultimate failure to come through but on his original intent. *Szafron v. Wielogosinski (In re Wielogosinski)*, 628 B.R. 547, 554 (Bankr. N.D. Ill. 2021). Later acts or omissions are irrelevant. *Handler*, 620 B.R. at 630. A knowingly false statement about "resources to repay," in contrast, is one of present fact and so may be actionable regardless of the debtor's intent to pay down the road. *Id.* at 629.

Home Rehab's amended complaint lacks the necessary allegations of intent. As it did before, Home Rehab alleges that Fixler made "continued promises regarding his ability to get the funds from his father with more time either through funds Fixler received during his father's lifetime or with his later inheritance." (Am. Comp. ¶ 71). Home Rehab adds: "Fixler explained that the family money was there, through his father, to ensure that [he] would be able to satisfy all of his obligations to Home Rehab." (*Id.* ¶ 68). But nothing Home Rehab alleges supports its conclusion that Fixler never intended to follow through on these promises. And while his statement that he could get funds from his wealthy father was one of present fact rather than a promise, nowhere does Home Rehab allege that the statement was false.

Home Rehab insists, though, that it has alleged three circumstances showing Fixler's fraudulent intent. Home Rehab points to his failure to attempt to obtain financing to pay off his debts (Am. Comp. ¶ 74), his actions at the time he took the draws (*id.* ¶ 73), and the timing of the draws themselves (*id.*).

None of these do the trick. First, Fixler's failure to look for a loan to repay his obligations wrongly shifts the focus from his intent at the time he promised to repay the living expense draws to his actions later on. *See Wielogosinski,* 628 B.R. at 554. Again, a debtor's later acts will not support an inference that he had fraudulent intent when he made a false promise. *Handler*, 620 B.R. at 630.

Second, it is unclear what Home Rehab means when it alleges that "the actions of Fixler during the time was taking the draws" show he never intended to repay them. (Am. Comp. ¶ 73). Which actions? Home Rehab never says. It asserts that the actions are "described in detail throughout the amended complaint" (Resp. at 6 ), but that is not enough. It was Home Rehab's job to identify the relevant allegations. "A court need not scour the parties' papers to find evidence to support their arguments." *Layng v. Khan (In re Khan)*, Nos. 20 B 17315, 21 A 67, 2022 WL 108329, at *1 (Bankr. N.D. Ill. Jan. 12, 2022).

**STATEMENT**

Third, the timing of the draws (which Home Rehab at least specifies) suggests nothing about Fixler's intent. Home Rehab notes that Fixler took a draw in April 2019 although he had not made his contribution for the company's loss. Home Rehab also notes that Fixler took a draw in May 2019 and then quit the company the same month. But these, too, are later acts on Fixler's part. The critical question is his intent when he originally promised to repay the draws, not later when he took each individual draw. *Wielogosinski,* 628 B.R. at 554. And even if these later acts were relevant, they would show only Fixler's inability to pay (since it appears he could not make the capital contribution because he lacked the money and then quit the company because he could not meet his obligations) rather than his intent never to repay. Given that Fixler had already shelled out more than $2 million toward his share of the company's losses, the reasonable inference is that he did not pay because he could not pay, not that he never intended to.

Without facts suggesting Fixler never intended to repay, the remaining claim in Count I alleges no more than a breach of contract, *In re Davis*, 638 F.3d 549, 554 (7th Cir. 2011), and "a breach of contract creates only a dischargeable debt," not one non-dischargeable under section 523(a)(2)(A), *Schiller DuCanto & Fleck v. Potter (In re Potter)*, 616 B.R. 745, 753 (Bankr. N.D. Ill. 2020) (internal quotation omitted). Count I will be dismissed.

**b. Count II**

Count II will be dismissed as well. Home Rehab still alleges no facts from which it can be inferred that Fixler was Home Rehab's fiduciary.

The amended complaint's major change from its predecessor is the attachment of the 2012 LLC operating agreement. But the earlier agreement changes nothing. The later operating agreement gave management and control to all of Home Rehab's members, *see Fixler*, 2022 WL 2903356, at *7, and the earlier operating agreement did the same (Am. Comp. Ex. A to Ex. 1 at 6). Under the 2012 operating agreement, each member had the "right, power, and authority" to take any action necessary for the operations of the company. (*Id.*). Each member could also devote as much time to the company as the member decided was reasonably required. (*Id.* at 7).

Apparently recognizing that the newly-attached operating agreement makes no difference, Home Rehab points to the Peretz affidavit. The affidavit declares that no matter what the 2012 operating agreement may have said, "it was Ken (and only Ken) that had the real and actual authority and control over Home Rehab." (Am. Comp. Ex. 1, ¶ 7). The affidavit adds that "it was Ken (and only Ken) that was specifically entrusted with the management and operations of Home Rehab." (*Id.*; *see also* Am. Comp. ¶¶ 21, 35). But these assertions also change nothing. The original complaint made the same allegations. *See Fixler*, 2022 WL 2903356, at *7.

As the dismissal decision explained, an implied fiduciary relationship comes about only when the parties have an "unequal relationship," one where there is "'a difference in knowledge

-6-

STATEMENT

or power between fiduciary and principal'" that gives "the former a position of ascendancy over the latter." *Fixler*, 2022 WL 2903356, at *7 (quoting *In re Marchiando*, 13 F.3d. 1111, 1116 (7th Cir. 1994). But "a corporate officer or shareholder's greater knowledge of daily business operations" does not place him in that kind of "position of ascendancy" if others have access to the same information and can exercise the same control. *Id.*; *Shrock v. Meier (In re Meier)*, Nos. 14 B 10105, 14 A 00403, 15 A 00198, 2016 WL 5942309, at *14 (Bankr. N.D. Ill. Oct. 12, 2016).

The original complaint alleged only that the other members allowed Fixler to have sole control of Home Rehab, not that the corporate structure gave him sole control (since it did not). The amended complaint alleges the same. (*See, e.g.,* Am. Comp. ¶ 36 (describing "the *decision to vest* [Fixler] with the authority for Home Rehab" (emphasis added)). Nor did Fixler deprive the other members of information when they asked for it. According to the amended complaint, the members in fact met with Fixler when they had concerns about his business strategy. (*Id.* ¶¶ 40-41). Peretz himself acknowledges that Fixler "gave the other Members periodic updates and sometimes consulted with us regarding strategy for the business." (*Id.* Ex. 1, ¶ 8).

As the dismissal decision also explained, if there is no difference in knowledge "there must at least be a 'concentration of power' that is 'substantially one-sided.'" *Fixler*, 2022 WL 2903356, at *8 (quoting *In re Frain*, 230 F.3d 1014, 1017 (7th Cir. 2000)). So, for example, an implied fiduciary relationship may come about when a corporate officer is able to prevent his expulsion. *Frain*, 230 F.3d at 1018. In *Frain*, the shareholder agreement gave shareholders the power to terminate other shareholders, "but in practice [the] power was hollow" because the shareholder agreement also gave the debtor-shareholder 75% of the voting shares. *Id.* He could be removed "only if he wanted to be removed." *Id.*

Home Rehab's amended complaint alleges nothing like that here. Neither the 2012 operating agreement nor the 2017 operating agreement empowered Fixler (who was never more than a minority member) to shut out the other members. In fact, neither agreement addressed the expulsion of members at all (*see* Am. Comp. Ex. A to Ex. 1, Art. 9), although under Illinois law the agreements could have, *see* 805 ILCS 180/35-45(4) (declaring that an LLC member is "dissociated" upon, among other things, "[t]he member's expulsion pursuant to the operating agreement"). The original complaint alleged that Fixler had "ascendancy" over the other members only because "they left him to his own devices, not because the operating agreement empowered Fixler to shut them out." *Fixler*, 2022 WL 2903356, at *8. The amended complaint alleges the same.

Without facts suggesting that Fixler was Home Rehab's fiduciary because there was either an express or an implied fiduciary relationship, the amended complaint fails to allege a plausible claim under section 523(a)(4). Count II will be dismissed.

-7-

**STATEMENT**

### c. Dismissal with Prejudice

Home Rehab has now had two chances to state a plausible nondischargeability claim against Fixler and has been unable to state one. Home Rehab's original complaint failed to state a claim and was dismissed. The dismissal decision explained what Home Rehab had to do to avoid dismissal and gave Home Rehab a chance to fix the problems. But although Home Rehab amended its complaint, the amended complaint comes no closer to stating a nondischargeability claim than its predecessor did. A plaintiff does not get unlimited chances to state a claim. *Schaul v. Ludwig (In re Ludwig)*, 527 B.R. 614, 624 (Bankr. N.D. Ill. 2015). "At some point, amendments must end and the defendant allowed to go on his way." *Id.* That point has been reached here.

Because it is now apparent that Home Rehab can never state a plausible claim under section 523(a)(2) or section 523(a)(4), the amended complaint will be dismissed with prejudice.

### 3. Conclusion

The motion of defendant Kenneth Fixler to dismiss the amended adversary complaint of plaintiff BCL-Home Rehab LLC for failure to state a claim is granted. The amended complaint is dismissed with prejudice. A separate Rule 7058 judgment will be entered.

Dated: May 30, 2023

_____
A. Benjamin Goldgar
United States Bankruptcy Judge